# EXHIBIT A

## REGULATIONS GOVERNING DISCIPLINARY, CLASSIFICATION, AND MAIL PROCEDURES FOR ALL INMATES AT THE ADULT CORRECTIONAL INSTITUTIONS, STATE OF RHODE ISLAND. (Morris Rules)

I. GENERAL INFORMATION

A. Definition

Classification . . . contributes to a smoothly, efficiently, operated correctional program by the pooling [**37] of all relevant information concerning the offender, by devising a program for the individual based upon that information, and by keeping that program realistically in line with the individual's requirements. If furnishes an orderly method to the institution administrator by which the varied needs and requirements of each inmate may be followed through from commitment to discharge. Through its diagnostic and coordinating functions, classification not only contributes to the objective of rehabilitation but also to custody, discipline, work assignments, officer and inmate morale, and the effective use of training opportunities. Through the data it develops, it assists in long-range planning and development, both in the correctional system as a whole and in the individual institution.

B. Objectives

The Classification Process:

The primary objective of classification as a systematic process is the development and administration of an integrated and realistic program of treatment for the individual, with procedures for changing the program when indicated. This primary objective is attained through five general approaches: (a) The analysis of the individual's problems through the us of every available diagnostic technique, including social investigation, [*162] medical, psychological, psychiatric examinations, educational, vocational, religious, and recreational studies. The observations of custodial officers offer data of value; (b) A treatment and training program is evolved in staff conference during or after the inmate's personal appearance before the Board, based upon these analyses and a frank discussion of its purposes with the inmate; (c) The program decided upon must be placed into operation; (d) It may be revised when indicated. Classification, a dynamic process, cannot be effective unless program modifications are made in accordance with the changing needs of the individual inmate; (e) What is done for the inmate in the institution needs to be correlated with his program on parole.

C. Essential Features

Essential Features of Classification:

1. The Classification Process: The classification process consists of organized procedures by which the diagnosis, treatment-planning, and the carrying out of the component parts of the general treatment program are coordinated and focused on the individual in prison and on parole. Procedures shall be as indicated in the General Laws of Rhode Island, 42-56-29.

2. The Reception Program. The reception program includes the instruction of orientation of the newly-received inmate regrading the institutional and parole programs during his stay in reception facility while the initial diagnostic case studies are being made.

3. The Admission Summary. The admission summary consists of the compilation, first, of information from all phases of the diagnostic study during the reception period; and, second, of the listing of recommendations issuing from this diagnosis for treatment of such individual. The admission summary is the cornerstone upon which a cumulative case history is developed, as information about the inmate is added to it systematically during his time in prison.

4. The Records Office. A records office, conveniently located and well organized, is essential for the classification program. The cumulative case histories are the primary sources of information about the inmate's programs and all other aspects of their cases.

5. The Institutional Classification Board. The institutional Classification Board consists of personnel as indicated in the General Laws of Rhode Island, 42-56-30 as amended. They meet together as a whole or in subgroups to consider and to direct the care and treatment program of each individual inmate.

6. The Initial Classification Meeting. The initial classification meeting occurs shortly after an inmate's assignment to an institution. All diagnostic factors available in the case are studied, and a realistic program of custodial care and constructive treatment is formulated.

7. Reclassification. Reclassification meetings are held at regular intervals, and whenever a major change in an inmate's program appears indicated. Such reviews of an individual's case help insure continuity in the treatment program and expedite necessary program revisions to meet the changing needs of the inmate.

8. Classification Procedures Immediately Prior to Parole or Release. These classification procedures shall be as indicated in the General Laws of Rhode Island.

C. Applicable Statutes, Rhode Island General Laws, 42-56-29 AS AMENDED. Receiving and orientation standards which will safeguard society and which will provide for the most efficient possible rehabilitation of individual prisoners there shall be established within the Department of Corrections a receiving and orientation unit which shall receive all male persons sentenced to the Adult Correctional Institution for a term of imprisonment of more than one year. Every such person so sentenced shall be segregated for a period not to exceed thirty (30) days during which period such person shall be studied and evaluated to determine whether such person shall be maximum, medium, or minimum security risk, and to develop a program of rehabilitation, education and medical and other [*163] care as shall be deemed necessary and appropriate to prepare such person to become a useful member of society. During such period, medical, psychometric and psychological examinations shall be made of such person and the results thereof, together with the nature of the offense for which such person has been committed, the previous criminal history, if any, the recommendations of the department of the attorney general and of the sentencing court, and the social history of such person shall be studied and evaluated in determining the degree of custodial care of such person, the rehabilitation program for such person, such medical or other care as may be necessary, and such spiritual and religious guidance as shall be indicated by the preference of such person.

42-56-30, CLASSIFICATION BOARD-For the purpose of such study and in order to regulate a system of classification of persons committed to the custody of the department, there shall be within the department a classification board consisting of five (5) persons to be appointed by the Director of the Department of Corrections to serve at his pleasure. The Director shall also have the authority to establish an addition classification board to facilitate the classification system when he deems necessary.

Sec. 2. This act shall take effect upon passage.

(42-56-31)-Determination of classification and rehabilitation programs of prisoners.-It shall be the duty of said classification board to review all studies made of each prisoner during the period of his reception and from time to time thereafter as shall be necessary to further the purposes of this chapter; and to recommend to the director the security classification and rehabilitation program for such person. Said director shall review said recommendation and if he shall approve the same he shall cause said recommendation to be put into effect. In the event he shall disapprove the same, he shall request said board to make further study and review. In the event thereafter the director shall disapprove such further recommendation, said decision shall be final.

(42-56-32)-Classification Unit.-Within said Department of Corrections, there shall be a classification unit which shall collect and record all the data concerning each person sentenced to the Adult Correctional Institutions. Said unit shall periodically review the file of each male person and shall report to the board its findings and recommendations for such persons as shall have been sentenced to imprisonment for more than one year for such action as the board may deem necessary and appropriate. The classification unit shall furnish the parole board for its consideration in every case the file of each person under consideration for parole.

13-8-22, AS AMENDED. Manner of obtaining information by board.-The parole board in the discharge of its duties under this chapter shall not be required to receive or consider any petition, and it may secure the information upon which is exercises its authority, or upon which it makes its findings in any case, in such manner and by such means as it may consider most fitting to carry out the purposes of this chapter; provided, however, it shall be the duty of the clerks of the several courts of the state, the sheriffs and their deputies, the police officers of the several cities and towns of the state, the probation officers, the officers of the Adult Correctional Institutions, and every person having charge of any other place where prisoners are confined or detained, to furnish to the parole board and to any member thereof, any and all information they may have relating to the character and history of any prisoner whose sentence is placed under the control of the board by this chapter. In the case of prisoners transferred to federal institutions under the provisions of 13-12-1, as amended, of the general laws, the parole board may, in its discretion, arrange to obtain information concerning such prisoners from the appropriate officials of the United State Bureau of Prisons; such information shall include, but shall not be limited to, testimony of the prisoner being considered for parole, [*164] official records and reports, including recommendations concerning the prisoners. The parole board is authorized [**45] to request of the contracting authority inclusion of provisions for obtaining the aforesaid information in contracts made pursuant to 13-12-1, as amended, of the general laws.

13-8-23. Agencies required to give reports to parole board.-Information concerning applicants for parole shall be provided by (a) the Assistant Director of Adult Services who shall submit a list of all prisoners under his control who will be eligible for parole in a given month not later than the tenth day of the

second month preceding. Such list shall identify the prisoner by name, offense, date of commitment; (b) the Assistant Director of Adult Services who shall secure reports from prison officials who have had direct contact with the prisoner including the Deputy Assistant Director of Adult Services, the chaplain, the work detail officer, the prison physician, and the classification officer. He shall transmit such reports, together with all pertinent classification information, such as social history, etc., and any actions or recommendations made by a classification board or committee in the institution to the office of the parole board not later than the twentieth day of the month next preceding the month in which the individual is eligible to appear before the board; (c) the attorney general's department who shall supply to the office of the parole board a report of any recommendation which it may care to make, and shall consult the trial judge in the case to determine if he may wish to make any comment or recommendations; (d) the state psychiatrist who shall examine the prisoner upon notice from the office of the parole board and shall submit his findings and recommendations to the office of the parole board not later than the twentieth day of the month next preceding the month in which the prisoner is eligible to appear before the board; (e) the psychological services agency who shall upon notice from the office of the parole board examine the prisoner and report their findings and recommendations to the office of the parole board not later than the twentieth day of the month next preceding the month in which the prisoner is eligible to appear before the board; (f) the state Department of Corrections which shall submit a transcript of the previous criminal record of the prisoner including the date of offenses, nature of offenses, and the disposition of each; a copy of the presentence investigation; a full summary of the contact of this division with the prisoner during any prior period under supervision, either probation or parole, or both; and any recommendations concerning the current application for parole.

II. CLASSIFICATION CATEGORIES

Receiving Status.

Category of all inmates remanded to institution by court after disposition of charge. Receiving status is not to exceed thirty (30) days pursuant to 42-56-29 of the General Laws of Rhode Island, as amended.

A. Category "A":

General prison population. Normal category of referral from receiving unit and normal category of inmate during term at the Adult Correctional Institutions.

Inmate may be removed from category for the following reasons:

1. Temporary removal for stated period by Disciplinary Board after conviction of disciplinary offense.

2. Reclassification by Classification Board shall be predicated on conduct of inmate which indicates inability to adjust in general prison population, for protection of the inmate or others, and for the security of the institution.

All inmates within category shall be eligible for all work and education, rehabilitative and recreational programs of the institution as availability provides. They shall be afforded full visiting privileges and normal category living location provided for by policy.

B. Category "B":

Category of inmates who, because of their pattern of conduct, require on a temporary [*165] basis close restrictive movement and closer supervision than Category "A" population. Work eligibility is suspended in this category, but the inmate shall have use of educational materials recommended by the education department.

The inmate in this category shall be subject to the following controls:

1. Living conditions to be determined by the administration.

2. They shall remain unemployed.

3. Meals in cells-subject to administrative decision.

4. No televisions or radios are allowed.

5. No institutional activities, other than rehabilitative and educational programs in the discretion of the deputy assistant director or assistant director.

6. Visiting to be held in area other than regular visiting room to be approved by member of the administration staff, position of deputy warden or his superior. Inmate's hair length is not to be a factor in determining the visiting privileges.

7. May attend religious services.

8. Limited yard privileges for a period of one hour per day, weather permitting.

9. Routine health service-normal toilet articles allowed.

a. Showers-minimum of two a week or daily if possible.

b. Physician-submit request to officer.

c. Dentist-submit request to officer.

d. Medical emergencies to be attended to immediately.

10. Regular store orders except glass.

11. Usual clothing regulations.

12. Request to staff via "pink slip" or letter.

13. Reading material subject to administrative control.

14. Weekly change of linen and laundry service.

C. Category "C":

Category of inmates whose conduct indicates chronic inability to adjust to general prison population or who require maximum protection for themselves or others who constitute a serious threat to the security of the institution. The inmates shall have use of educational materials and services recommended by the education department and approved by the deputy assistant director. Hobby activity shall be allowed subject to the control of the deputy assistant director.

Inmates in this category shall be subject to the following controls:

1. Separate living location-to be determined by the deputy assistant director or his designee.

2. Visiting to be held in an area other than the regular visiting room to be approved by a member of the administration staff with the position of deputy assistant director or his superior. Inmates' hair length is not to be a factor in determining the visiting privileges.

3. All regular store orders except glass.

4. Normal toilet articles.

5. Meals in cells or at table as determined by assistant director or deputy assistant director after consultation with officer in charge.

6. Work-routine housekeeping duties with the unit only.

7. Spiritual needs-chaplains to visit regularly or on request.

8. Request to see staff via "pink slip" or letter.

9. Health

a. Showers-minimum of three a week, but daily showers if possible.

b. Physician-submit request to officer.

c. Dentist-submit request to officer at breakfast time.

d. Exercise-one hour a day, outdoors, at least every other day, Monday through Friday. Weekends and holidays excluded. Outdoor exercise will not be given in inclement weather.

[*166] e. Medical emergencies to be attended to immediately.

10. Travel-all inmates leaving an entering the unit shall be searched and shall be escorted to and from their destination.

11. Reading material, subject to institutional control.

12. No televisions or phonographs.

13. Radios with earphones only.

14. Weekly change of linen. Weekly laundry privileges.

15. Mail-usual mail privileges.

16. Clothing-regulation shirt and trousers.

17. No institutional activities.

D. Category "D":

Category of inmates who because of their course of conduct while classified within Category "C" require closer control than provided with "C" category. In this category, the inmates shall have use of educational materials and services recommended by the education department and approved by the deputy assistant director. Hobby activity may be allowed subject to the discretion of the deputy assistant director. Inmates in this category shall be subject to the following controls:

1. Separate living location to be determined by the deputy assistant director, his designee, or superior.

2. Unemployed except housekeeping details in the unit.

3. Meals in the cell.

4. Spiritual needs-chaplains to visit regularly and upon request.

5. Health-same as "C". Exercise-same as "C".

6. Visits-same as "C".

7. Mail-same as "C".

8. Request to see staff-via "pink slip" [**52] or letter.

9. Normal toilet articles (except razors)-same as "C".

10. Store orders-toilet articles and tobacco products only.

11. Reading materials subject to institutional control.

12. No institutional activities.

13. No television, no radios.

14. Travel-same as "C".

15. Weekly change of linen. Weekly change of laundry.

CLASSIFICATION PROCEDURES

A. The Classification Board.

1. The classification board will meet together as a whole or in sub-groups. It shall be the duty of the chairman of the board to preside at the classification meeting. He shall determine the order of proceeding in each hearing and shall be responsible for determining the relevancy of information presented to the board.

No sub-groups shall consist of less than three persons.

2. The Classification Board shall review the status of every inmate in "B" and "C" classification at least every ninety (90) days. An inmate placed in "C" classification shall be entitled to review upon his request in writing giving the reasons for such request, after thirty (30) days in such classification; and thereafter he shall be entitled to review if either (a) his request is supported by a statement from any institution [**53] officer, chaplain, teacher, classification counselor, physician, or employee, or (b) his request includes new information or circumstances not previously called to the attention of the Classification Board. Inmates in "D" classification shall be entitled to review every thirty (30) days.

B. Notice. In cases where any downgrading of classification grade is to be considered, an inmate shall receive timely written notice. Said notice shall indicate why and also inform the inmate of his right to be assisted by a classification counselor at the classification meeting. If an inmate requests assistance of a classification counselor, such assistance will be rendered a reasonable time in advance of the hearing.

C. Classification Meeting.

1. No decision of the Classification Board considering a possible change of status shall be made without consulting the inmate's central file.

2. The chairman of the board shall explain the purpose of this meeting and the particular aspects of the inmates' records which may result in a classification change.

3. No misconduct shall be considered by the Classification Board unless the Disciplinary Board has made a finding unfavorable to the [**54] inmate.

4. The findings of the Disciplinary Board as to a particular infraction shall be conclusive.

5. The inmate's file shall not be available to the inmate but must be reviewed by the classification counselor representing the inmate.

6. The inmate shall have the right to present all pertinent information to the Board. In cases where downgrading of classification is being considered, this shall include the right to reasonable call and examine witnesses.

7. The Board shall discuss with the inmate any contemplation of classification change and the reasons therefor.

8. Upon completion of the discussion, the Board shall take the man under advisement.

9. After decision is reached, the inmate shall be called before Board to hear the decision and to be advised of its rationale and meaning.

10. A decision of the Classification Board must be based upon substantial evidence and reflect consideration of an inmate's entire record.

11. A record of the classification meeting shall include:

a. A summary of the proceedings and matters considered,

b. The classification decision manifesting a consideration of an inmate's total record and based upon substantial evidence therein.

12. All recommendations of the Classification Board shall be subject to the review of the assistant director pursuant to the provisions of 42-56-31 of the General Laws of Rhode Island.

RECORDS

The central file of each inmate committed to the Adult Correctional Institutions for more than one year must include the following:

A) Regular case summaries.

B) Probation officer's report and other diagnostic summaries from other agencies.

C) Up-to-date progress reports in the areas of work assignments, vocational training, education, psychiatry, and medical treatment.

D) Records of Disciplinary Board determinations.

E) Any correspondence relating to the inmate.

F) Identification material.

G) A record of all classification transactions.

DISCIPLINARY PROCEDURES

PROCEDURAL OUTLINE FOR DISCIPLINARY ACTION

FIVE MANDATORY STEPS:

1. Written charge by reporting officer or employee

2. Investigation and review by superior officer

3. Hearing before Disciplinary Board

4. Administrative review

5. Record

I. CHARGE BY REPORTING OFFICER OR EMPLOYEE

A. An officer or employee observing minor violations should handle such incidents tactfully and firmly by warning and counselling.

1. If the officer or employee considers the imposition of discipline necessary for a minor offense, he may at his discretion present the inmate with the option of a written charge and subsequent appearance before a Disciplinary Board, or administrative loss of institutional privileges for a period of up to two nights.

a) The charge and choice of disposition must be presented to the inmate with dispatch.

b) The inmate must execute a signed waiver of his right to appear before the Disciplinary Board.

c) If such waiver is obtained, the administrative penalty must commence immediately.

d) Records of all such two night losses of institutional privileges shall be maintained for one calendar year, then shall be destroyed.

e) The inmate shall be given a copy of any waiver of a right to the Disciplinary Hearing he executes and records of any punishment resulting therefrom.

f) Refusal by an inmate to waive his rights to be granted a Disciplinary Hearing can in no way be held against him. Following demand for a Disciplinary Hearing on a minor violation, the inmate may not be confined to his cell pending said hearing as a threat to the order of safety of the [**57] institution. If the inmate is subsequently found guilty by the Disciplinary Board, punishment may not be imposed beyond the two night loss of institutional privileges, unless additional sufficient rationale is found by the Disciplinary Board.

2. The inmate may be presented the aforementioned choice of loss of institutional privileges only once during each calendar week. The written notice of choice shall inform the inmate that additional minor violations during that period shall require a Disciplinary Hearing.

3. A written copy of the charge, or if waiver is obtained, the signed waiver shall be transmitted with dispatch by the correctional officer to the superior officer on duty at the time. Upon receipt of same, the superior officer may, if he considers the violation too minor to warrant imposition of discipline, dismiss the charges and/or release the inmate from confinement in his cell.

B. When an employee or officer considers a written charge and full disciplinary procedures necessary for proper discipline and control, he must show in writing on an inmate violation report form: inmate's name, housing work assignment, if applicable; time, date, place and charge; give known [**58] details concerning the alleged violation, and sign the report.

C. An officer may take immediate custody of an inmate being charged with a disciplinary infraction, if such action is deemed by the officer to be necessary to avoid assault or serious disorder. However, only a superior officer may determine that an inmate should be held pending further investigation or hearing by a disciplinary board. Such detention should take place only when it appears that the inmate represents a threat to himself or to others, or to the security or order of the institution. The superior officer determining that detention prior to an investigation and hearing is necessary must make a written report, and his decision is subject to review by the assistant director, deputy assistant director, or associate director as soon as possible. Such detention should only last as long as the circumstances requiring it remain in effect and in no event should an inmate be detained without a hearing beyond the next meeting of the disciplinary board. If an inmate is locked up pending an investigation and disciplinary hearing, such detention must not be in the punitive segregation area unless the security or safety of the institution so requires.

II. INVESTIGATION BY A SUPERIOR OFFICER

A. The reporting officer or employee must submit a written report of a charge to a superior officer as soon as possible after the alleged violation occurs

B. A superior officer shall with dispatch and under any circumstances no later than one day after filing the charge, orally inform the inmate of the charge against him.

C. The superior officer shall conduct a preliminary investigation of the matter without unnecessary delay. The investigation will include interviews with the reporting employee, the inmate charged, and any other employee or inmates indicated.

D. The superior officer shall make a written summary of his investigation including the results of his interviews and a notation of notice to the inmate. He shall sign and submit a full report to the Associate Director of the facility in which the infraction occurs. A copy of the disciplinary report filed by the superior officer should be given to the inmate prior to any disciplinary hearing together with the notice required in subsection F infra.

E. The Associate Director may either dismiss the charge or transmit notice of the hearing to the Chief of Classification Services, who shall in turn assign responsibility for the notice and subsequent procedures to a classification counselor. Said notice shall be timely and shall include the date and time of the hearing, the charge, including institutional rule violated, reference to the time, place, and other persons involved, if any; and the notice of the right to assistance by a classification counselor and the right to appeal to the Assistant Director or Deputy Assistant Director any unfavorable disposition by the disciplinary board.

F. The assigned classification counselor will provide the inmate with a copy of the notice he has received concerning the hearing. Notice of the hearing must be transmitted to the inmate in a sufficient period of time prior to the hearing to give the inmate an opportunity to prepare a defense.

G. Any inmate being charged shall have the right to be assisted at the disciplinary hearing by a classification counselor, or any other individual authorized by the Assistant Director and Deputy Assistant Director, Adult Services. The inmate shall be informed of this right as part of the [**61] notice provided of the hearing itself.

H. Only a duly authorized Disciplinary Board has power to issue punishment to inmates, including those in the Behavioral Conditioning Unit, except as indicated in Section I, paragraph A(1) above.

I. Whenever an inmate is charged with an institutional violation where he may be the subject of criminal prosecution, the written notice referred to in paragraphs E and F above shall so notify the inmate, and advise him that although statements he makes in his defense at a disciplinary hearing are probably not admissible for affirmative use by the prosecution at a trial, he may wish to consult an attorney to determine what action to take.

III. THE HEARING BEFORE THE DISCIPLINARY BOARD

A. The disciplinary board shall consist of three members. The Associate Director or in his absence, a Superior Officer of the facility in which the alleged infraction occurred shall be the chairman. The two remaining members shall be personnel from the custody and treatment departments respectively. The disciplinary board shall meet at least twice during each calendar week, at least three days apart.

B. Any officer or employee who initiates a violation report or who investigates and reviews the initiating officer's report is not eligible to sit on the disciplinary board to hear that case.

C. The hearing shall be conducted in the following manner.

1. The circumstances of the charge will be read and fully explained by the Chairman of the Board.

2. The inmate shall admit or deny the charges.

3. The board members may interrogate the inmate and others as necessary. All interrogation will take place in the presence of the inmate, except where the board determines that an informant's identity must be protected. In those cases, the board shall make such a determination on the record and indicate the nature of the informant's testimony.

4. If the inmate thinks the charge against him is untrue (in whole or in part), he may present information available to him and others. Said presentation shall include the right to call a reasonable number of witnesses, both adverse and favorable and examine said witnesses.

5. If the inmate has requested the assistance of a classification counselor or other individuals approved by the Assistant Director and Deputy Assistant Director of Adult Services, said person shall assist him in the presentation of the case.

6. Upon completion of the hearing, the Disciplinary Board shall take the matter under advisement.

7. After decision is reached by the Board, the inmate shall be called before the board to hear the decision and to be advised of its rationale and consequences.

8. A board decision must be based upon substantial evidence.

9. In the event of an unfavorable disposition, the inmate will be informed of his right to appeal the decision of the disciplinary board to the Assistant Director or Deputy Assistant Director. It is to be made clear to the inmate that with respect to any appeal he may request assistance from his classification counselor or other individuals approved by the Assistant Director and Deputy Assistant Director of Adult Services in framing what he believes is wrong with the decision. The inmate shall be allowed to have his objection, if any, incorporated in the case record submitted for review.

10. Any inmate appearing before a disciplinary board may upon request have a recording made of the hearing provided that the equipment for said recording must be furnished by the inmate and that said recordings are to be impounded except for purposes of administrative or judicial review.

Actions Taken by a Disciplinary Board may be as follows:

1. Dismissal of charge

2. Reprimand

3. Recommendations to classification board for change of status

4. Temporary loss of specified privileges within inmate classification not to exceed thirty days

5. One to thirty days placement in punitive segregation

6. # 5 above plus referral to classification board with recommendations of classification

7. Loss of good time as prescribed by law under 42-56-24 of the General Laws

8. Any combination of 3 through 7 above and/or suspended action on any or all of 3 through 7 above

IV. REVIEW

A. Within three days of the Disciplinary Board decision (Sundays and holidays excluded) if an inmate requests an appeal of a decision of the disciplinary board, the record of any proceedings shall be forwarded to the Assistant Director or Deputy Assistant Director. This review shall be completed and the inmate notified of the decision on review within one week. Disposition shall be suspended during [**65] this period.

B. If the Assistant Director or Deputy Assistant Director is in agreement with the Disciplinary Board decision, the decision is approved and ordered.

C. If the Assistant Director or Deputy Assistant Director does not agree with the Disciplinary Board decision, he may order further proceedings or he may reduce or suspend any result of a Disciplinary Board hearing unfavorable to the inmate.

D. The inmate will be notified of any change resulting from the review process.

Wherever individuals are named in their position of authority, it is permissible in their absence for their lawful substitutes to replace them.

V. THE DISCIPLINARY RECORD

A. A record shall be maintained of all disciplinary proceedings including review by the Assistant Director or Deputy Assistant Director.

B. The disciplinary record shall include:

1. A summary of all information produced at the hearing including:

a. testimony of all witnesses

b. the written summary investigation report referred to in II. D above

c. the nature of the testimony of any unidentified informant

2. Physical evidence viewed

3. Findings of fact and the supporting reasons for the disposition decided upon

4. Rationale for change in disposition upon review by the Assistant Director or Deputy Assistant Director

C. A complete record of all disciplinary proceedings shall be maintained in the inmate's permanent file. If the right to be granted a hearing for a minor violation is exercised, the disciplinary board must indicate: (1) that the option of loss of institutional privileges for one or two nights has been tendered and refused; (2) if disposition in excess of the aforementioned two-day period is meted out, the supporting explanation must be included on the record. If the right to a disciplinary hearing is waived, the violation shall in no way appear on the inmate's record or upon any record placed before the Parole Board or Classification Board. Records of all such minor violations for which the right to a disciplinary hearing is waived shall be maintained for one year, and a copy shall be given to the inmate when the penalty is imposed.

D. Substantial Evidence. A determination of the Disciplinary Board must be based upon substantial evidence manifested in the record of [**67] disciplinary proceedings.

E. If any of the facts establish that the Board made a determination based upon information obtained from an unidentified informant, then the record must (1) contain some factual information from which the Board can reasonably conclude that the informant was credible and his information reliable, including independent corroborating material and (2) establish that the informant spoke with personal knowledge of the matters contained in such statement.

PUNISHABLE CONDUCT

Inmates will be subject to disciplinary action if found guilty of the following:

a) Disobeying a lawful order of the Department Director, Assistant Director, Deputy Assistant Director, or any officer or employee of the institution, or of any written prison rule;

b) Escape from the institution or custody of the institutional personnel or attempt to escape including any attempt to tamper with security devices, possession of articles for such tampering or hiding in an unauthorized area;

c) Disregard, neglect, or refusal to work without valid reason;

d) Swearing, cursing, or use of any other vulgar, abusive, insolent, threatening or any other improper language toward any other inmates, officer, or person visiting the institution or indecency in language, action, or gesture at any time;

e) Committing of any assault or battery whatsoever on employees, inmates, or any person;

f) Leaving of cell or place of assignment or other appointed place without permission;

g) Willfully disfiguring, damaging, or destroying any part of the institution, or any materials, tools, or machinery;

h) Committing of any overt mutinous act, inciting a riot and/or general disturbance in any part of the institution or on any work assignment;

i) Being intoxicated (by homemade intoxicants or purchased intoxicants) or under the influence of any kind of alcohol, drug, barbiturates, and/or amphetamines not prescribed by an institutional medical or psychiatric physician or possession of same;

j) Making or having possession of any type of dangerous weapon or facsimile;

k) Failing to report to any required destination without authorization, permission, or valid reason;

l) Possession of currency, coin or paper, without authorization;

m) Forgoing or altering an institutional pass;

n) Making or attempting to make credit contracts in any form without authorization;

o) Giving false information to an officer or employee of the institution;

p) Passing or receiving contraband from another inmate, visitor and/or employee regardless of the place of occurrence;

q) Gambling of any type;

r) Possession of a syringe and/or needle or similar device;

s) Possession of controlled medication without prescription and authorization from an institutional medical official;

t) Fraudulent requests of any type, i. e. check requests, commissary orders, etc., to circumvent established rules, regulations, and procedures for the same;

u) Stealing and/or unauthorized possession of state property or any property;

v) Making unauthorized telephone calls;

w) Refusal to submit to required examination after superior officer has determined inmate is under the influence of a narcotic and/or alcoholic stimulant;

x) Any conduct constituting a crime under the ordinances of cities and towns and/or state or federal laws. Such conduct may subject the offender to prosecution in addition to institutional punishments.

MINIMUM STANDARDS

I. Except as otherwise provided, every inmate of the A.C.I. in categories A, B, C, and D or disciplinary status, excluding punitive segregation, shall be entitled to at least the following:

A. A cell equipped with lighting sufficient for an inmate to read by during hours prior to the time cell illumination is required to be extinguished for inmates in the general population, toilet and sink, bed, and mattress.

B. Clothing to the extent required for use in the general population.

C. Bedding, including blanket, sheets, pillows, and pillowcases.

D. Personal hygiene supplies (including soap, toothbrush, toothpaste, powder, towel and toilet paper).

E. Minimum writing materials.

F. Prescription eyeglasses.

G. Any book, periodical, document, or other paper of his that he would be permitted to have in the general population, not to exceed five, except that such limitation shall not apply to lawbooks, legal periodicals, or other legal materials.

H. Meals of the same type and quantity as provided in the general population.

I. Showers at least twice a week.

J. Exercise outside of the cell for at least one hour each day and where weather permits, such exercise shall be out-of-doors every other day. (holidays & weekends excluded)

K. Correspondence privileges available to all inmates.

L. Daily access to medical facilities.

M. Visiting subject to usual administrative control.

MINIMUM STANDARDS OF CONFINEMENT WHILE IN PUNITIVE SEGREGATION

A. A cell equipped with lighting sufficient to read by, toilet, sink, bed, blankets, and mattress.

B. Suitable clothing.

C. Personal hygiene supplies (including soap, toothbrush, toothpaste, powder, towel, and toilet paper).

D. Writing materials, type and amount in discretion of superior officer on duty.

E. Prescription eyeglasses.

F. Reasonable reading material, at least two books of inmate's choice and owned by the inmate.

G. Meals of the same type and quantity as provided in the general population.

H. Showers at least twice a week.

I. Exercise outside cell not to commence until after five days unless otherwise ordered by institutional physician.

J. Right to send mail and receive letters.

K. Access to medical facilities.

For purposes of punishment no inmate is ever, under any circumstances, to be deprived of any item or activity required under these MINIMUM STANDARDS provisions, however,

1. Whenever in the judgment of the Assistant Director, Deputy Assistant Director, Associate Director, or Superior Officer in charge of a facility there is danger that an inmate will destroy any item required to be furnished or will be injurious to himself or to another, any of the above minimal entitlements may be denied as necessary to remove the danger.

2. Upon removal of any minimal entitlement, a written report shall be made and forwarded to the Ass't. Director within 12 hours identifying the inmate, the item or activity of which he has been deprived and the reason therefor, which report shall be reviewed in timely manner by the Ass't. Director.

3. Upon receipt of any such report, which indicates that the inmate constitutes a danger to himself and/or others, the Assistant Director or his designee shall arrange for a physician to visit the inmate as soon as possible. Any recommendations of the physician must be followed immediately.

4. In all cases where minimal items or activities are deprived they shall be restored as soon as restoration appears to be consistent with safety.

Inmates confined under punitive segregation conditions are to be visited by a physician at least every other day.

EMERGENCY OR TEMPORARY PROVISIONS

When faced with an immediate threat to the security or safety of the Adult Correctional Institutions or any of its employees or inmates, officials of the institution may temporarily reassign inmates in accordance with the following regulations.

I. Reassignment by a correctional officer on approval of his immediate supervisor:

A. When a correctional officer or other employee witnesses an inmate commit a serious wrongdoing.

B. When an inmate presents reasonable eye witness information that an inmate committed a serious wrongdoing.

C. When an inmate seeks safety or protection from others.

II. By supervisory officials of rank of Lieutenant or above, pending investigation.

A. When an inmate is suspected of serious wrongdoing, either committed or planned.

B. When an inmate is suspected of being a witness to overt acts which constitute a serious violation of institution regulations or a violation of state law.

C. When requested by prosecuting attorney or superintendent of State Police.

1. When inmate is suspected as perpetrator of a crime.

2. When inmate is a material witness to a criminal act.

Requests under C will be honored upon oral request but shall not be observed beyond seventy-two (72) hours in absence of receipt by Assistant Director of a written confirmation by requesting authority.

III. All inmates assigned temporarily under the preceding provisions will, as soon as reasonably possible, be informed in writing of the reason for their assignment and will be afforded all other rights due them under institution disciplinary and classification procedures.

IV. A written record of all temporary reassignments shall be forwarded to the Associate Director for his concurrence or nonconcurrence, and he shall forward the record to the Assistant Director or his designee for approval or disapproval. The report showing review of each is to be placed in the inmate's permanent classification file.

V. All temporary assignments shall be reviewed at the next regular meeting of the Classification Board, which in any case will not exceed one week, and final action by the Board will be ordered without unnecessary delay.

REGULATIONS GOVERNING MAIL FOR ALL INMATES AT THE ADULT CORRECTIONAL INSTITUTIONS.

1. All outgoing mail shall be transmitted unopened and uninspected.

2. All incoming mail may be opened and inspected solely for the purpose of detecting contraband and said mail may not be read or delayed.

3. Any incoming mail of any kind designated from courts, judges, or attorneys may be opened for inspection only in the presence of the inmate addressee.