# EXHIBIT F

# RHODE ISLAND DEPARTMENT OF CORRECTIONS

## POLICY AND PROCEDURE

| | | | |
|---|---|---|---|
| | **POLICY NUMBER:** 24.01-7 DOC | **EFFECTIVE DATE:** 08/08/2016 | **PAGE 1 OF 17** |
| | **SUPERSEDES:** 24.01-6 DOC | **DIRECTOR:** [signature] | Please use BLUE ink. |

| **SECTION:** | **SUBJECT:** |
|---|---|
| MAIL, TELEPHONE, VISITING | INMATE MAIL |

**AUTHORITY:** Rhode Island General Laws (RIGL) § 42-56-10 (22), Powers of the director; § 42-56-1, Declaration of Policy;

**REFERENCES:** ACA standard #'s 4-4487 (inmate corresp.); 4-4488 (when inmate bears costs, limits related to security); 4-4489 (indigent inmates' postage allowance); 4-4490 (inmate access to publications); 4-4491 (inspection for contraband); 4-4492 (sealed letters to specified classes); 4-4493 (inspection to intercept cash, etc.); 4-4494 (contraband - inspection, disposition); 4-4495 (incoming and outgoing letters and packages - limit on # of hours held); 4-4496 (forwarding mail following an inmate's release); the most recent version of RIDOC Policy #'s 2.09 DOC, Accountability of Inmate Money/Checks; 2.17 DOC, Inmate Accounts; 2.25 DOC, Indigent Inmates; 9.14 DOC, Detecting and Controlling Contraband on or in the Possession of Inmates/Detainees (including Frisk, Strip and Body Cavity Searches) or in Inmate Transport Vehicles; 13.10 DOC, Inmate Grievance Procedure; 14.01 DOC, Intake/Committing Process; 14.03 DOC, Inmate Property Accountability; 20.07 DOC, Notifying Offenders of Their Duty to Register with Law Enforcement Agencies and Procedures for Community Notification; 24.03 DOC, Visits; Amatel v. Reno, 156 F.3d 192 (D.C. Cir. 1998); Mauro v. Arpaio, 188 F.3d 1054 (9th Cir. 1999); RIGL § 11-37.1-1 et seq., Sexual Offender Registration and Community Notification, RIGL § 15-1-1 Domestic Relations – persons eligible to marry

| | |
|---|---|
| **INMATE / PUBLIC ACCESS?** | X YES |
| **AVAILABLE IN SPANISH?** | X YES |

240-RICR-10-00-1

# TITLE 240 – DEPARTMENT OF CORRECTIONS

## CHAPTER 10 – Inmate Life

## SUBCHAPTER 00 - N/A

PART 1 – Inmate Mail

### 1.1 Authority

R.I. Gen. Laws § 42-56-10(22), Powers of the director; R.I. Gen. Laws § 42-56-1, Declaration of Policy.

### 1.2 Purpose

To promulgate rules and guidelines governing inmate correspondence via postal service for all facilities at the Adult Correctional Institution (ACI) and interoffice mail.

### 1.3 Policy

A. Mail procedures are established and maintained to assist inmates in social, legal, business, and other correspondence deemed appropriate. The following procedures govern the management, collection, and/or distribution of inmate mail at all ACI facilities.

B. Inmates will be permitted uninterrupted correspondence and/or publications (e.g., letters, memos, greeting cards, books, magazines, etc.) as long as the correspondence/publications pose no threat to the safety and security of the facility, public officials, or the general public, do not hinder rehabilitation of an inmate, are not being used to further illegal activities, and meet all other specifications contained within this policy.

### 1.4 Procedures

#### 1.4.1 General Information

A. Miscellaneous

1. When the inmate bears the mailing cost, there is no limit on the volume of letters the inmate can send or receive or on the length, language, content, or source of mail, or publications except when there is reasonable belief that limitation is necessary to protect public safety or institutional order and security, assist the rehabilitation of an inmate, and/or prevent the furthering of illegal activities.

2. All facility mailrooms are "OUT OF BOUNDS" to all inmates and unauthorized staff.

3. Mail returned to the Rhode Island Department of Corrections (RIDOC) via the United States Postal Service (USPS) (i.e., "Return to Sender") will be handled in the following manner:

   a. Mail originally sent from an inmate as privileged mail [i.e., addressed to an attorney or any other individual/agency listed in item §§ 1.4.2(A)(2)(a) through (r) of this Part] is considered privileged mail upon its return to the facility and is subject to the procedures outlined in item § 1.4.2(B) of this Part, Incoming Privileged Mail.

   b. Mail originally sent from an inmate as non-privileged mail [i.e., addressed to someone other than an attorney or any other individual/agency listed in item §§ 1.4.2(A)(2)(a) through (r) of this Part] is considered non-privileged mail upon its return to the facility and is subject to the procedures outlined in item § 1.4.3(B) of this Part, Incoming Non-Privileged Mail.

B. Incoming Mail – General Information

   1. Incoming mail is distributed to inmates within 24 hours of receipt from the Post Office whenever possible, excluding weekends, holidays and emergency situations.

   2. Incoming mail may be opened, inspected for contraband and read by authorized institutional staff within the guidelines set forth in this policy.

   3. All First Class mail (letters and packages) is forwarded by appropriate facility, administrative and/or executive staff (e.g., facility Mail Officers, the Assistant to the Director, applicable Legal Counsel staff) to inmates who have been transferred to other facilities or institutions or released provided that a forwarding address is available.

      a. If forwarding addresses are not available, First Class letters and packages are returned to senders.

      b. First Class letters and packages sent to inmates who have been transferred to out-of-state or federal facilities are forwarded to the inmates, in care of the Wardens of the receiving facilities.

   4. Mail received with postage due is returned to the sender.

      a. If the sender is unknown, the postage due mail is returned to the Post Office.

5. Publications and/or packages containing commodities authorized for inmate possession are not accepted on a C.O.D. basis.

6. All authorized items shipped through the USPS are accepted on a prepaid (in full) basis only.

7. Mail from inmates incarcerated at federal, county, municipal, and other state correctional facilities, and from inmates on Home Confinement addressed to inmates at the ACI is returned to the sender, except in cases where the correspondence is between immediate family members as defined in § 1.4.1(C)(5) of this Part.

8. All mail (letters, packages, etc.) is only accepted when arriving through the USPS. Packages arriving from United Parcel Service (UPS), Federal Express, etc., are not accepted.

9. Removal of Items from Incoming Mail

   a. In each case where it is deemed necessary to remove any item(s) from incoming mail, a written record is made of such action. A copy of this record is given to the affected inmate. The record includes:

      (1) Inmate's name and I.D. number;

      (2) Description of mail in question, to include a description of the item;

      (3) Description of action taken and reason(s) for such action;

      (4) Disposition of removed item(s); and

      (5) Signature of the Mail Officer

   b. When contraband is found which is not otherwise illegal, a notice is sent to the inmate, and the contraband is returned to the sender at the inmate's expense.

      (1) If there is no return address, contraband that is not otherwise illegal is destroyed.

      (2) In the event that items are removed from mail, the inmate may appeal the action taken through the formalized inmate grievance procedure, consistent with the most recent version of RIDOC Policy 13.10 DOC, Inmate Grievance Procedure.

   c. When illegal contraband is seized, procedures outlined in the most recent version of RIDOC Policy 9.14 DOC, Detecting and Confiscating Contraband on or in the Possession of

                Inmates/Detainees (including Frisk, Strip and Body Cavity Searches) or in Inmate Transport Vehicles.

      d.    Any cash, checks, postal notes, money orders, or drafts found in incoming mail are seized and forwarded to the Inmate Accounts Office to be deposited in the inmate's account, according to the most recent version of RIDOC Policy 2.09 DOC, Accountability of Inmate Money/Checks.

           (1)    A receipt of the transaction is given to the addressee and a copy is placed in the inmate's facility file.

10.    Documentation/Notification Requirements for Disapproval of Incoming Publications

      a.    When any written material (e.g., books, magazines, periodicals, pamphlets, newspapers, newsletters, etc.), or portion thereof, addressed to an inmate is received at the facility, but is not deliverable to the inmate for any reason set forth in § 1.4.3(B)(3) of this Part, the inmate is promptly notified, in writing, of the following:

           (1)    The reason(s) for refusing to allow the material or a portion thereof into the facility (see § 1.4.3(B)(3)(d) of this Part for specific criteria for prohibiting materials);

           (2)    The process for the inmate to appeal the decision to prohibit the material.

      b.    The publisher/sender, when identifiable, is notified via copy of the inmate's final notice of denial of the material issued by the Publication Review Committee and may request a review of this action by writing to the Assistant Director of Institutions and Operations within fourteen (14) days of receipt of notification.

           (1)    A publisher is defined as a business, organization, or firm which issues and makes available to the general public books and other publications for sale and wide distribution.

      c.    Where criminal activity is suspected, in addition to the procedures set forth in this policy, the matter is referred to the appropriate law enforcement agency [e.g., USPS, Federal Bureau of Investigation (FBI), Attorney General] by the Director or designee [the Office of Inspections or the Special Investigations Unit (SIU)].

      d.    In the event library books are confiscated by staff due to questions about the content of the material, the review of the book(s) will follow the same procedures outlined for incoming non-privileged mail. Notice that the book(s) will be prohibited from the facilities will be

sent to the librarian by the ADIO after the review process is completed.

11. Unclaimed Mail

   a. See the most recent version of RIDOC Policy 14.01 DOC, Intake/Committing Process for procedures for handling inmate property returned to RIDOC by the US Postal Service as undeliverable.

   b. Incoming mail for a released inmate for whom a valid forwarding address is not available, and for whom there is no return address, is returned to the RIDOC central mailroom where is it held for one (1) day, after which time it is returned to the United State Post Office for disposition.

12. Certified Mail

   a. The Mail Officer maintains a logbook for incoming Certified Mail. This logbook includes the date Certified Mail was received and the date it was delivered to the inmate addressee.

      (1) Inmates receiving Certified Mail must sign the receipts (i.e., green cards).

      (2) Once the inmate signs the receipt, the Mail Officer sends the receipt back to the sender via USPS, and makes the appropriate notations in the logbook.

C. Outgoing Mail – General Information

   1. Outgoing mail receptacles are available to inmates in each facility.

   2. Outgoing mail is transmitted to the Post Office within a 24-hour period whenever possible, excluding weekends, holidays, and emergency situations.

   3. The inmate sender must list his/her name, RIDOC inmate identification number, facility, housing unit, and bunk assignment in the top left-hand corner of the envelope on any mail s/he sends out, e.g., mail addressed to Departmental personnel through the inter-Departmental mail system (requiring no postage) or via USPS (requiring proper postage paid by the inmate).

   4. Proper postage must be affixed.

   5. Inter-Departmental mail between inmates is not authorized, except in cases where the correspondence is between immediate family members (to

include blood, marriage, and step relationships) to be defined as parent, grandparent, spouse (including common-law), brother or sister, son or daughter, grandson or granddaughter, or when an inmate is a party to or a witness in an active legal action in which both inmates are involved (e.g., co-defendants), and they are both pro se (verified by RIDOC's Office of Legal Counsel). Inmates wishing to correspond with other inmates should submit requests to the facility Warden or designee.

6. In order to establish the existence of common-law marriage, spouses are required to present two (2) different examples of the following documents:

   a. A personal affidavit stating when and where you and your common-law spouse mutually agreed to become husband and wife; whether you were ever married, ceremonially or otherwise, to anyone else, and the details surrounding the end of any previous marriages (how they were ended, where and when); and any other details that will help to establish the existence of a husband and wife relationship.

   b. Affidavits from other persons who know you and are familiar with your relationship, setting forth particulars such as the length of time you lived together, your address(es); whether there was any public announcement of your marriage; and whether your friends, neighbors, and relatives regard you as married.

   c. Deed showing title to property held jointly by both parties to the common-law marriage.

   d. Bank statements and checks showing joint ownership of the accounts.

   e. Insurance policies naming the other party as beneficiary.

   f. Birth certificates naming you and your common-law spouse as parents of your child(ren).

   g. Employment records listing your common-law spouse as an immediate family member.

   h. School records listing the names of both common-law spouses as parents.

   i. Credit card accounts in the names of both common-law spouses.

   j. Loan documents, mortgages, and promissory notes evidencing joint financial obligations of the parties.

   k. Mail addressed to you and your common-law spouse as "Mr. and Mrs."

   l. Any documents showing that the wife has assumed the surname of her common-law husband.

   m. Church records indicating familial status, including membership information, baptismal certificates of the parties' child(ren), Sunday school registration forms, etc.

7. All outgoing inmate mail must contain the following statement in letters at least 1/8" high: "ATTENTION! THIS IS R.I. DEPT. OF CORRECTIONS INMATE CORRESPONDENCE. The contents have not been censored. The Sender is not authorized to enter into credit contracts."

   a. Each facility's Mail Officer is responsible for stamping this message on all appropriate mail if said mail does not include this message pre-printed on the envelopes.

8. Outgoing mail may be opened, inspected for contraband, and read by authorized facility staff within the guidelines set forth in this policy.

9. All postage costs for outgoing mail will be paid by the inmate (with the exception of indigent inmates).

10. Indigent Inmates. The Department of Corrections will pay First Class postage for up to three (3) outgoing personal letters per week, as well as First Class postage for all outgoing privileged correspondence of indigent inmates.

   a. The most recent version of RIDOC Policy 2.25 DOC, Indigent Inmates, defines an indigent inmate as one who is involuntarily unemployed, has less than $10.00 in his/her active account, and has had no deposits of $10.00 or more in the previous two (2) months.

   b. Procedures for indigent inmate outgoing mail at the Intake Service Center (ISC) are as follows:

      (1) Inmate places mail unstamped in the central mail depository.

      (2) Both the ISC and the central mailroom officers conduct periodic, random name checks only on unstamped mail to ensure the sender is an indigent inmate. Mail not meeting those criteria is returned to the inmate.

      (3) The Department does not pay for Certified or other specific mailing categories for indigent inmates.

   c. Procedures for indigent inmate mail at all other facilities are as follows. The inmate:

  (1) Completes money transfer form, to include name and I.D. number;

  (2) Checks off postage;

  (3) Writes "Indigent" in section "Reason for Transferring Money";

  (4) Signs the form; and

  (5) Attaches the form to the mail and gives said form to area supervisor or places it in the receptacle designated for this purpose.

11. Books of postage stamps are available for inmate purchase via the inmate commissary.

 a. Postage stamps are not accepted through visits or mail.

 b. Inmates are allowed to have no more than two (2) books of twenty (20) or four (4) books of ten (10) postage stamps each in their possession.

 c. All postage stamps must be attached in booklets. No loose stamps are allowed.

 d. Inmates in disciplinary confinement who have adequate funds are responsible for purchasing postage stamp books. Said inmates who are not indigent are not provided with "state-issued" stamps.

12. Documentation/Notification Requirements for Disapproval of Outgoing Mail

 a. When any mail, or a portion thereof, is not mailed for any of the reasons set forth in this policy, the inmate is promptly notified in writing of the following:

  (1) The reason for refusal to send the mail, or a portion thereof; and

  (2) The fact that the inmate may submit a written appeal through the formalized inmate grievance procedure.

 b. Where criminal activity is suspected, in addition to the procedures set forth in this policy, the matter is referred to the appropriate law enforcement agency (e.g., USPS, FBI, Attorney General) by the Director or designee [the Office of Inspections or the Special Investigations Unit (SIU)].

### 1.4.2 Privileged Mail

A. General Guidelines

1. Privileged mail, whether it is incoming or outgoing, cannot be read by RIDOC staff.

2. Inmates are permitted to send and receive letters from the following persons:

    a. Any official of a court of the United States or the State of Rhode Island or acting on behalf of the court (judge, attorney, clerk, probation and parole officers);

    b. The President of the United States;

    c. The Governor of the State of Rhode Island;

    d. Any member of the Congress of the United States;

    e. Any member of the General Assembly of the State of Rhode Island;

    f. The Attorney General of the United States;

    g. The Attorney General of the State of Rhode Island;

    h. The Director or any agent of the Federal Bureau of Investigation (FBI);

    i. The senior administrator of any state's State Police;

    j. The Director of the Rhode Island Department of Corrections;

    k. Any Assistant Director of the Rhode Island Department of Corrections;

    l. Any member of the Parole Board;

    m. RIDOC Inmate Grievance Coordinator;

    n. Any public official or agency, where the mail appears on its face to relate to legal matters;

    o. The American Civil Liberties Union (ACLU), its affiliates and sections, i.e., The National Prison Project;

    p. Public Defender;

    q. Attorney;

    r. Legal Aid Society.

  3. Inmates and other persons with whom inmates may correspond as provided above shall not use or permit others to use authorized privileged mail for:

    a. personal, non-legal, and/or non-official correspondence;

    b. the transmission of contraband; and/or

    c. the transmittal of communications to be given or forwarded to persons not specified above.

  4. Anyone receiving mail that, according to the above-listed criteria, is considered prohibited should submit such communications or materials to the Warden of the facility in which the inmate is confined.

B. Incoming Privileged Mail

  1. Incoming privileged mail may be opened and inspected in the presence of the inmate addressee. RIDOC staff is prohibited from reading privileged incoming mail.

  2. Incoming privileged mail is treated as privileged only if the name and/or official status of the sender appear clearly on the envelope.

C. Outgoing Privileged Mail

  1. Outgoing privileged mail may only be inspected if a reasonable belief exists that the security of the institution is at risk. In such cases, it may be inspected for contraband only in the presence of the inmate. RIDOC staff is prohibited from reading outgoing privileged mail.

## 1.4.3 Non-Privileged Mail

A. General Guidelines

  1. Non-privileged mail, both incoming and outgoing, may be opened and inspected for contraband.

  2. It is the policy of RIDOC not to read or censor incoming or outgoing mail, except for reasons of safety or security.

  3. Written material shall not be rejected solely because its content is religious, philosophical, social or sexual, or because its content is unpopular, repugnant, or based upon an employee's personal views of the merit of such mail.

4. Non-privileged mail may be read, and disallowed, provided there is a reasonable belief that reading the mail is necessary to preserve facility order and security or to protect the public safety.

5. Inmates are notified when incoming or outgoing mail is withheld in part or in full, as set forth in §1.4.3(B)(3) of this Part.

6. Inspection of non-privileged mail may be undertaken only by authorized staff in accordance with the procedures outlined in this document and in established post orders.

7. Only the following RIDOC staff may read non-privileged mail:

    a. Director;

    b. Assistant Directors;

    c. Wardens;

    d. Deputy Wardens;

    e. Shift Commanders;

    f. Inspectors;

    g. Investigators (SIU);

    h. Staff member designated by the Warden for such purpose (e.g. Mail Officer);

    i. Members of the Publication Review Committee (PRC).

    j. Legal Counsel for the RIDOC

8. Any facility-based authorized staff member reading inmate mail pursuant to this policy records such action in a logbook maintained by the facility Mailroom Officer for such purpose.

B. Incoming Non-Privileged Mail

1. In addition to the General Guidelines specified above, the Director or the Assistant Director of Institutions & Operations may authorize the reading of incoming non-privileged mail when in his/her opinion such action is necessary to prevent entry of materials and/or information prohibited under this policy.

2. Incoming Printed (Non-Privileged) Material

   a. The purchase of commercially-produced photographs and hard cover books is prohibited.

   b. Inmates are not allowed to order written material with the "bill me later" option on the order form.

   c. Items received in the mail (e.g., pictures from magazines) cannot be posted in inmates' cells.

   d. As a general rule, any printed material, including but not limited to newspapers, drawings, magazines, pamphlets, books, printouts from websites or photographs may be excluded, if it is determined to be detrimental to the security, good order or discipline of the facility, and/or if the effect of which might hinder rehabilitation of an inmate, facilitate criminal activity or contribute to a hostile work environment.

   e. See § 1.4.3(B)(3)(d) of this Part for specific criteria for prohibiting materials.

3. Disapproval of Incoming Non-Privileged Mail

   a. Incoming non-privileged mail is disapproved only to prevent interference with facility goals of security, order, discipline, rehabilitation, if it might facilitate, encourage or instruct in criminal activity, or contribute to a hostile work environment. Disapproval is not based upon an employee's personal views of the merit of such mail.

      (1) RIDOC reserves the right to disallow personal photographs and/or facsimiles which feature nudity as defined herein [see § 1.4.3(B)(3)(d)((8)) of this Part].

      (2) Consistent with the most recent version of RIDOC Policy 14.03 DOC, Inmate Property Accountability, personal property not authorized within a facility is sent to a person designated by the inmate (at no expense to the State), donated to a charitable organization, or destroyed. Property not disposed of by the inmate is donated or destroyed after thirty (30) days, except at ISC, where it is destroyed after ten (10) days.

   b. RIDOC reserves the right to disallow previously approved publications on an issue-by-issue review.

   c. Facility Wardens or designees (e.g., Mail Officers), Shift Commanders and the Publication Review Committee review written

materials to determine whether they will be allowed into a facility. Review of the written material shall take into account the desire to minimize intrusiveness along with the criteria for prohibition outlined in § 1.4.3(B)(3)(d) of this Part.

(1) Mail Officer Responsibilities: Whenever a Mail Officer finds a publication or other written material objectionable or questionable s/he will forward it to the Shift Commander for his/her review along with the Chain of Custody form within two (2) working days. The Mail Officer will notify the inmate pursuant to § 1.4.1(B)(10)(a) of this Part.

(2) Shift Commander Responsibilities: The Shift Commander will review the publication or other written material to determine if it will be allowed into the facility in whole or in part. If s/he determines the material as a whole will be allowed into the facility the Shift Commander will instruct the Mail Officer to deliver the material to the inmate.

   (AA) If the Shift Commander determines that only a portion of the publication or other written material should enter the facility, s/he will instruct the Mail Officer to contact the inmate and explain the reason that part of the material will be removed or redacted prior to delivery. If the inmate agrees to accept the written material with portions removed or redacted, s/he will receive the remainder of the material.

   (BB) If the inmate does not accept the written material with portions removed or redacted, s/he may ask for a review of the Shift Commander's decision by the Warden/designee. The Mail Officer will send the material to the Warden/designee along with the Chain of Custody form within two (2) working days.

   (CC) If the Shift Commander finds the publication objectionable or questionable as a whole, s/he will forward it to the Warden/designee along with the Chain of Custody form within two (2) working days.

(3) Warden/Designee Responsibilities: The Warden/designee will review the publication or other written material and determine whether it will be allowed into the facility in whole or in part. If it is allowed in whole, the Warden/designee will instruct the Mail Officer to deliver the material to the inmate/library.

 (AA) If the Warden/designee allows the publication or other written material in part, s/he will instruct the Mail Officer to contact the inmate/librarian and explain the reason that part of the material will be removed or redacted. If the inmate agrees to accept the material with portions removed or redacted, s/he will receive the remainder of the material.

 (BB) If the inmate does not accept the Warden/designee's decision that part of the written material will be removed or redacted, s/he will be given the Chain of Custody form and the material will be forwarded to the Publication Review Committee within five (5) working days.

 (CC) If the Warden/designee finds the publication or other written material objectionable or questionable as a whole, s/he will forward the material to the Publication Review Committee (PRC) along with the Chain of Custody form within five (5) working days.

(4) Publication Review Committee Responsibilities: The Publications Review Committee (PRC) is comprised of the following individuals: The Central Office Warden; The Chief of SIU; The Interdepartmental Project Manager, Director's Office

 (AA) The PRC will review the publication or other written material and determine whether the material will be allowed in the facility(s). The committee will take into account the criteria for prohibition outlined in § 1.4.3(B)(3)(d) of this Part as well as the desire to minimize intrusiveness.

 (BB) If the material is allowed, the PRC will return the material to the facility Warden/designee (e.g., Mail Officer) to be delivered to the inmate.

 (CC) If the PRC finds the written material objectionable pursuant to the criteria outlined in this policy, the material will be prohibited. The PRC will send the inmate the Chain of Custody form within seven (7) working days, notifying the inmate that the material has been prohibited from the facility along with an explanation for the denial. The ADIO will notify the publisher/sender of the PRC's decision.

(5) Inmate Appeal of the PRC to the Assistant Director of Institutions and Operations (ADIO): If the inmate wishes to seek review of the PRC's decision, the inmate will be afforded 14 days to write to the ADIO to seek review of the PRC's decision. The publication will be held until the ADIO renders a decision approving or disapproving the PRC's decision.

(AA) The Assistant Director of Institutions and Operations will notify Wardens/designees (e.g., Mail Officers) and the PRC of his/her decision regarding the questionable/objectionable publication within 14 days.

(BB) If the ADIO upholds the PRC's decision (i.e., the material is disallowed), Mail Officers notify the affected inmates in writing of the ADIO's decision and the inmate will be offered the opportunity to send the publication out (at the inmate's cost) or it will be destroyed. The publisher/sender will receive notice of the decision from the ADIO.

(CC) If the ADIO overturns the PRC's decision (i.e., the material is approved for delivery to inmates), Mail Officers notify Wardens and deliver the publication.

(6) If the inmate chooses not to request an appeal, s/he may submit a money transfer form to the Mail Officer with instructions as to whom the publication should be sent. If the inmate does not send a money transfer form, the publication is destroyed.

(7) In the event the publisher wishes to request a review of the decision made by the PRC or the ADIO, the publisher may request a review by writing to the ADIO within fourteen (14) working days of receipt of the notice.

d. The contents of the material, as a whole or in part, may be prohibited if the materials:

(1) Depict or describe procedures for the construction or use of weapons, ammunition, bombs, or incendiary devices;

(2) Depict, describe, or encourage methods of escape from correctional facilities, or contain blueprints, drawing, or similar descriptions of any correctional facility within the State of Rhode Island;

(3) Depict or describe procedures for the brewing of alcoholic beverages or the manufacture of drugs, drug paraphernalia and/or poisons;

(4) Are written in code;

(5) Depict, describe, or encourage activities that may lead to the use of physical violence or group disruption;

(6) Encourage, facilitate, or instruct in the commission of criminal activity;

(7) Are sexually explicit;

  (AA) "Sexually explicit material", means a pictorial depiction of sexual acts including sexual intercourse, oral sex, masturbation and/or anal sex.

(8) Inmates who are serving sentences that would require them upon release to register as "sexual offenders" pursuant to R.I. Gen. Laws § 11-37.1-1 et seq. and the most recent version of RIDOC Policy 20.07 DOC, Notifying Offenders of their Duty to Register with Law Enforcement Agencies and Procedures for Community Notification, for specific offenses delineated therein are also prohibited from receiving materials that feature nudity.

  (AA) "Nudity", means a pictorial depiction where male or female genitalia or buttocks and/or female breasts are exposed; "features" means that the item contains depictions of nudity or sexually explicit conduct on a routine basis or promotes itself based upon such depictions in the case of one-time issues.

(9) In addition, offenders whose crimes involved minors may be further restricted with respect to printed materials/publications. Child sexual abusers are additionally prohibited from ordering child- and family-oriented publications.

(10) If facility staff approved to review written materials, as forth in § 1.4.3(A)(5) of this Part are uncertain of the nature of an inmate's crime or of the appropriateness of a specific publication, they consult the Director of RIDOC's Sex Offender Treatment Program, who makes case-by-case determinations.

  (11) The effect of which is to glorify or promote violence against men/women/children;

  (12) The effect of which is to glorify or promote gang activities or racial, religious, or ethnic discord;

  (13) Are not acceptable for regular mailing in the United States because they are "non-mailable material" under Federal law, military regulations, or USPS regulations.

    (AA) Prior to sending the publication elsewhere or destruction, the publication is given to the Central Office Warden for dissemination to all facility Investigators.

C. Outgoing Non-Privileged Mail

 1. In addition to the General Guidelines specified above, the Director or designee may authorize the reading of outgoing non-privileged mail only when s/he has received specific information (reasonable suspicion) that a particular inmate's mail contains information which is prohibited under this policy.

 2. Where outgoing mail is read pursuant to this section, and prohibited information is found, the mail or relevant portion thereof may be confiscated. In addition, the inmate sending the mail is subject to disciplinary action.