UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RICHARD PAIVA, as successor to JOSEPH MORRIS, individually and on behalf of all others similarly situated,<br>　　　　Plaintiff,<br><br>　　v.<br><br>WAYNE SALISBURY, in his capacity as the Director of the State of Rhode Island Department of Corrections, as successor to ANTHONY TRAVISONO,<br>　　　　Defendant.<br><br>**In re *Pro se* Emergency Motion of Class Member for Temporary Restraining Order and Preliminary Injunction** | :<br>:<br>:<br>:<br>:<br>:<br>:　C.A. No. 69-04192JJM-PAS<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

### REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Now pending before the Court is the emergency motion for temporary restraining order and preliminary injunction filed *pro se* by Class Member Joseph W. Shepard seeking to enjoin Defendant Wayne T. Salisbury in his capacity as director of the Rhode Island Department of Corrections ("RIDOC") from violating an Interim Order by Agreement (ECF No. 28 or "Interim Order"), which issued on May 22, 2024.[1]  ECF No. 35.  The Interim Order enjoins RIDOC from altering without leave of Court certain policies that issued in July 2023 (RIDOC Policy 11.01-8 ("Inmate Discipline") and RIDOC Policy 12.27-1 ("Conditions of Confinement")) ("Policies"),

---

[1] Filed by Mr. Shepard at the same time is a second motion, captioned as a motion to enforce Federal Rules of Civil Procedure 23(g) duties of class counsel and for ancillary relief.  ECF No. 36.  Both motions are supported by exhibits that have been docketed at ECF No. 37.  This report and recommendation addresses only the motion for injunctive relief (ECF No. 35) as supported by these exhibits.  It does not address the motion to enforce the duties of class counsel (ECF No. 36).  A response to this aspect of Mr. Shepard's motions has been filed, ECF No. 38, which will be held under advisement until Mr. Shepard's time to reply has passed.

with specific focus on the thirty-day limit on punitive segregation and the manner for conducting disciplinary hearings.  The Interim Order further provides that it is not intended to prejudice the negotiation or terms of any consent decree that might issue in this case, as well as that:

> This . . . is not intended to provide for contempt proceedings based on <u>deviations</u> from the standards established in the new policies and procedures resulting from good faith challenges that RIDOC may face in implementing the new policies and procedures, nor is it intended to prevent or deter any <u>adjustments</u> to the new policies and procedures, including without limitation adjustments to make them consistent with the matters pertaining to mental health that are the subject of ongoing mediation or to address institutional safety and security.

ECF No. 28 at 2 (emphasis added).  Consistent with this provision of the Interim Order, the Court has summarily denied two motions by individual class members seeking to enforce it.  <u>Paiva v. Salisbury</u>, C.A. No. 69-04192JJM-PAS, 2025 WL 2886992, at *1-3 (D.R.I. Oct. 10, 2025), <u>adopted,</u> 2025 WL 3025585 (D.R.I. Oct. 29, 2025); <u>Paiva v. Salisbury</u>, C.A. No. 69-04192JJM-PAS, 2025 WL 369274, at *1-3 (D.R.I. Feb. 3, 2025), <u>adopted by text order</u> (D.R.I. Feb. 24, 2025).

A prisoner in RIDOC's custody, Mr. Shepard alleges that RIDOC has failed to abide by the Interim Order by altering the Policies and that RIDOC has retaliated against him for filing grievances and legal communications by imposing unconstitutional conditions of confinement.  ECF No. 35 at 1.  Regarding matters pertinent to the Interim Order, Mr. Shepard alleges deviations from the Policies in that "RIDOC has created their own . . . status's . . . as a loophole to keep inmates in segregation/DCU for longer than 30 days, violating Policy 11.01-8" and that "LOP sanctions are being issued as **LOAP**, contrary to policy."  <u>Id.</u> at 4 (emphasis in original).  In Mr. Shepard's Declaration in support of the motion for injunction, he avers that he was disciplined with ten days in segregation and that, during this ten-day discipline period, he was denied access, *inter alia,* to previously available tablet functions.  ECF No. 35-2 at 2.  For

remedies, Mr. Shepard asks the Court to enjoin RIDOC from enforcing any policy changes since July 30, 2023, and to suspend all disciplinary actions arising from such changes, as well as to issue orders pertaining to Mr. Shepard's individualized concerns (unrelated to the Interim Order) about access to the courts, law library computer use and retaliation.  ECF No. 35 at 6.

Mr. Shepard's motion for emergency injunctive relief has been referred to me for report and recommendation.

I.       BACKGROUND

In December 2019, the Court appointed a successor class representative and successor class counsel in this long-pending class action.  See Paiva v. Rhode Island Dep't. of Corr., 17-mc-14JJM, Text Order of Dec. 18, 2019.  Since that time, these attorneys have been representing the certified class and its class members (including Mr. Shepard) pursuant to Fed. R. Civ. P. 23(c)(1)(B).[2]  Subsequently, the Court appointed an expert with correctional expertise and an expert with mental health expertise, both pursuant to Fed. R. Evid. 706 and paid for by RIDOC. See Paiva, 69-cv-4192, ECF Nos. 19, 24.  Based on the Court's referral in September 2020, the parties have been involved in an active and ongoing court-annexed mediation that has resulted among other changes in RIDOC's adoption of the Policies that imposed a thirty-day limit on punitive segregation and altered the manner of conducting discipline proceedings.  See ECF Nos. 27, 28.

As the mediation proceeded, the Court issued the Interim Order by Agreement, ECF No. 28, to facilitate judicial efficiency and the ongoing and active mediation of remaining issues until a consent decree covering all issues could be developed and a fairness hearing (with notice and the right of opt-out or objection) could be conducted.  See ECF No. 27 at 3.  The Interim Order is

---

[2] As noted, n.1 *supra*, Mr. Shepard's dissatisfaction with these attorneys is the subject of a different motion to which a response has been filed.  It is outside the scope of this report and recommendation.

3

expressly limited in scope to enjoining RIDOC from amending, modifying or altering the Policies that include the thirty-day limit on punitive segregation and the revised discipline process without leave of Court. ECF No. 28. To avoid injury to the class by prolonged delay or distraction due to collateral proceedings to address deviations from the Policies or adjustments to the Policies as they are implemented and as RIDOC continues to calibrate its procedures in the context of the ongoing mediation, the Interim Order contains the proviso quoted above, which makes clear that RIDOC is not in contempt of the Interim Order either due to deviations as it works in good faith on implementation or if it adjusts the Policies, including to make them consistent with more recently implemented mental health policies or to address institutional safety and security. Id. at 2.

In May 2025, as permitted by the Interim Order, RIDOC issued adjustments to the Policies. ECF No. 37-1 at 47; ECF No. 37-2 at 20. Specifically, as described in the RIDOC memorandum to inmates dated May 2, 2025, regarding "Adjustments to Restrictive Housing and Inmate Discipline Policies," ECF No. 37-4 at 2, the Policies were adjusted including to amend the "loss of tablet" as a listed sanction so as to permit the loss not necessarily of the entire tablet but rather the loss of certain tablet functions (such as "messaging, apps, etc,"), as well as to clarify that an inmate in disciplinary confinement would have the "messaging" function on the tablet suspended. Id. at 2. Importantly, while not necessary because the Interim Order expressly permits the Policies to be so adjusted, RIDOC advised the Court of its intent to make these adjustments in the context of the ongoing court-annexed mediation before they were implemented and issued the May 2025 versions of these Policies with Court approval conveyed in a confidential mediation communication.[3]

---

[3] In general, such mediation communications are confidential pursuant to the Court's Alternative Dispute Resolution Plan. United States District Court of Rhode Island Alternative Dispute Resolution Plan § VIII at 6 (Mar. 1, 2006)

Since the Interim Order entered, the mediation has continued, with good faith participation by all parties, including RIDOC. See Paiva, 2025 WL 2886992, at *1.

## II.  STANDARD OF REVIEW

In considering Mr. Shepard's motion, the Court must be guided by the traditional equitable doctrine that interim injunctive relief is an extraordinary and drastic remedy that is "never awarded as of right." Sosa v. Massachusetts Dep't of Correction, 80 F.4th 15, 25 (1st Cir. 2023) (internal quotation marks omitted); Harris v. Wall, 217 F. Supp. 3d 541, 552 (D.R.I. 2016); Letourneau v. Aul, C.A. No. 14–421L, 2015 WL 5167854, at *2 (D.R.I. Sept. 3, 2015). To determine such a motion, the Court must apply the familiar four-factor legal standard, which requires the moving party to demonstrate: (1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is withheld; (3) a favorable balance of hardships; and (4) a fit (or lack of friction) between the injunction and the public interest. Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003). Thus, the movant seeking an interim injunction bears the burden of demonstrating that each of the four factors weigh in his favor, Letourneau, 2015 WL 5167854, at *2, with the "likelihood of success [a]s the main bearing wall of this framework." W Holding Co. v. AIG Ins. Co.-Puerto Rico, 748 F.3d 377, 383 (1st Cir. 2014) (internal quotation marks omitted). "[I]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle

---

(https://www.rid.uscourts.gov/sites/rid/files/documents/adr/ADRPlan-030106.pdf).  However, to avoid manifest injustice, the Court may find that confidentiality no longer protects such of the content of mediation communications as are necessary to the Court's determination of a pending issue. Liberty v. Rhode Island Dep't of Corr., C.A. No. 19-573-JJM-PAS, 2022 WL 18024627, at *3 n.8 (D.R.I. Dec. 30, 2022). Because the Court's advance approval of RIDOC's May 2025 adjustments to the Policies is necessary to the Court's determination of the issues presented by Mr. Shepard's motion, it would be manifestly unjust for the confidential mediation communication of approval not to be disclosed to this limited extent.

5

curiosity." Esso Standard Oil Co. (Puerto Rico) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006) (internal quotation marks omitted).

Mr. Shepard's status as a prisoner triggers an additional restriction on the availability of the interim injunctive relief he seeks that is set forth in the Prison Litigation Reform Act ("PLRA"). 18 U.S.C. § 3626. When (as here) the injunction sought is with respect to prison conditions, the PLRA provides that the court shall not enter a temporary restraining order or preliminary injunction unless it finds that the injunctive relief is "narrowly drawn, extend[s] no further than necessary to correct the harm the court finds requires preliminary relief, and [is] the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Further, the court considering an interim injunction "shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." Id. The court must also respect principles of state and federal comity. Id. In interpreting the PLRA, courts must be guided by Congress's "ambient intent" to curb the involvement of the federal judiciary in the day-to-day management of prisons. Morales Feliciano v. Rullan, 378 F.3d 42, 50 (1st Cir. 2004). Under the PLRA, preliminary injunctive relief automatically expires after ninety days unless the court makes specific findings supporting an extension. 18 U.S.C. § 3626(a)(1)-(2).

### III. ANALYSIS

As noted, Mr. Shepard's motion is not the first time that a class member in this case has asked the Court to find that RIDOC has violated the Interim Order. Paiva, 2025 WL 2886992, at *1-3 (summarily denying motion of class member Rudy Sepulveda seeking to hold RIDOC in contempt for violating Interim Order based on alleged deviation in specific instances in implementation based on movant's interpretation of particular aspect of one provision of

6

Policies); Paiva, 2025 WL 369274, at *2-3 (summarily denying motion of class member Ryan Callahan seeking to hold RIDOC in contempt for violating Interim Order based on alleged deviations from Policies; motion also fails on redressability element of constitutional standing in light of limited scope of obligations imposed by Interim Order); see Liberty v. Rhode Island Dep't of Corr., C.A. No. 19-573JJM, 2023 WL 6172253, at *1 (D.R.I. Sept. 22, 2023) (summarily denying motion of class member [in Paiva v. Salisbury] Bryan Sevegny to seek contempt in related case among other reasons because "membership in a certified class alone is not enough to confer party status for purposes of bringing a contempt motion to enforce a court order"). As in each of these instances, Mr. Shepard's motion for an injunction should be summarily denied.

Mr. Shepard's injunctive relief motion fails because, while the Interim Order may bar RIDOC from amending, modifying or altering the Policies (with focus on the thirty-day limit on punitive segregation and the manner for conducting discipline hearings) without leave of Court, it expressly stipulates that deviations in connection with good faith implementation are not redressable by contempt and that RIDOC remains free to make adjustments to the Policies. ECF No. 28. Thus, as relevant to the Interim Order,[4] Mr. Shepard's motion relies only on the adjustment to RIDOC Policy 11.01-8 (ECF No. 37-1 at 1-46) through the issuance of RIDOC Policy 11.01-9 on May 2, 2025 (ECF No. 37-1 at 47-91) and the adjustment to RIDOC Policy

---

[4] Mr. Shepard's motion for an emergency injunction also alleges that he has been denied due process and access to the courts and has been adversely impacted by RIDOC's library policies (which he attached to the motion) resulting in the "retaliatory" and "fabricated" January 2026 discipline. See ECF No. 35 at 3-4. Because these allegations have nothing to do with the Interim Order, I have not made any findings one way or the other regarding their viability. Nevertheless, apropos of Mr. Shepard's claim that he has been denied the ability to access this Court, I note that he has currently pending four civil cases against RIDOC, in two of which he has legal counsel. Further, as the presiding magistrate judge in one of his *pro se* cases, I also note that, far from barring his access to the courts, RIDOC recently facilitated Mr. Shepard's filing of, and court appearance to successfully prosecute, a motion to compel. See Shepard v. Morales, 24-cv-485-MRD-PAS, ECF No. 31 & Text Orders of Feb. 3 and 20, 2026. Mr. Shepard remains free to present his individual due process and access-to-the-courts concerns in the context of his other cases or he may file a new case. See ECF No. 38 at 2 ¶ 3(c).

7

12.27-1 (ECF No. 37-2 at 1-19) through the issuance of RIDOC Policy 12.27-2 on May 2, 2025 (ECF No. 37-2 at 20-36), both of which were approved by the Court in the mediation context. ECF No. 35-2 at 1. As applied to himself, Mr. Shepard alleges only that the ten-day discipline he received in January 2026 included the denial of certain "tablet functions that existed when ECF 28 was issued." ECF No. 35-2 at 2. Mr. Shepard's motion for injunctive relief appears to rely on the mistaken proposition that the Interim Order totally barred RIDOC from issuing <u>any</u> new version of RIDOC Policy 11.01-8 or 12.27-1.

       Mindful of Mr. Shepard's *pro se* status and guided by his contention regarding his own loss of certain tablet functions during the ten-day disciplinary confinement, which appears to be the trigger for the emergency injunction motion, the Court compared the 2023 and 2025 versions of RIDOC Policies 11.01 and 12.27. As to RIDOC Policy 11.01, the Court's review revealed that the portion of the 2025 version [RIDOC Policy 11.01-9] pertaining to "Loss of Privileges" differs from the 2023 version [RIDOC Policy 11.01-8] in that the 2023 version provided that "[l]oss of tablet" is one of the privileges that may be removed, ECF No. 37-1 at 6, while the 2025 version is adjusted to be more nuanced, providing for "[l]oss of tablet (including but not limited to messaging, apps, etc.)," ECF No. 37-1 at 51. As to RIDOC Policy 12.27, the Court's review revealed that the 2025 version is adjusted to add the clarification that "Administrative Confinement/Detention" and "Disciplinary Confinement" include the suspension of the "messaging feature on the tablet and kiosks." ECF No. 37-2 at 27-29.

       Importantly, the Court's review of the 2023 and 2025 versions of these Policies resulted in confirmation that the only pertinent adjustment is the relaxation/clarification of the tablet policy from 2023, which adjustment was approved in advance by the Court in the context of the mediation, and that RIDOC has not amended, modified or altered either the thirty-day limit on

8

disciplinary confinement or the manner of conducting discipline hearings.  Nor has Mr. Shepard identified any changes to the Policies that implicate either the thirty-day limit on disciplinary confinement or the manner of conducting discipline hearings.  Nor does Mr. Shepard's motion provide anything to support his claim that RIDOC has created a "loophole," ECF No. 35 at 4, to circumvent the ban on more than thirty days in disciplinary confinement; indeed, his Declaration alleges that his own discipline was well below that threshold (ten days).  See ECF No. 35-2 at 2.  Thus, Mr. Shepard has demonstrated only that RIDOC has adjusted the Policies impacting tablets to make them more nuanced and clearer, which the Interim Order specifically contemplated it could do and as the Court approved in the context of the mediation.

      Based on the foregoing, the Court finds that Mr. Shepard's motion should be denied because he has failed to establish likelihood of success on the merits in that the Interim Order has not been violated because it does not bar RIDOC from adjusting the sections of the Policies dealing with access to functions (like messaging) on the tablet.[5]  Further, the Court finds that the Interim Order specifically preserved RIDOC's flexibility to adjust the Policies as they are implemented in just such an instance as here, where RIDOC is calibrating how to integrate a rapidly changing technological innovation like the tablet into prison discipline and its other operations.  Nor does Mr. Shepard's motion sustain his burden of demonstrating irreparable harm or that the public interest and the balance of the equities support the issuance of injunctive relief.  See Shepard v. Rhode Island Dep't of Corr., C.A. No. 25-cv-361-JJM-PAS, 2026 WL 221424, at *1 (D.R.I. Jan. 28, 2026) ("plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is likely in the absence of an injunction") (internal quotation marks omitted).  To the contrary, the Court finds that the granting of the injunction Mr. Shepard seeks

---

[5] Thus, there is no need for the Court to consider other potential flaws in entertaining a *pro se* injunction motion in this case.

would seriously undermine the ongoing mediation proceedings, thereby harming the class and the public interest.  Nor is it appropriate for the Court to entertain an individualized motion to enforce the Interim Order to redress Mr. Shepard's claim of deviation from a particular aspect of the Policies in a specific instance.  See generally Paiva, 2025 WL 369274, at *2.

A coda: While I find that a collateral injunctive relief proceeding would cause the precise delay and distraction that the Interim Order sought to avoid in specifically limiting proceedings to enforce it, as with other class members who have filed analogous motions complaining of RIDOC's compliance with the Interim Order, the Court has already transmitted a copy of Mr. Shepard's motion for injunctive relief to the court-appointed correctional expert for his review and consideration of the issues Mr. Shepard has raised in the context of the ongoing mediation.  As noted in the response addressing the aspect of Mr. Shepard's motions that pertain to the adequacy of class counsel, "[c]lass counsel continue to advocate, on behalf of the class, regarding RIDOC policies concerning conditions of confinement and discipline, including the use, or overuse, of 'loss of all privileges' as a sanction , and other failures to adhere to the spirit or letter of these policies."  ECF No. 38 at 2.

## IV.     CONCLUSION

Based on the foregoing, I recommend that the Court summarily DENY Mr. Shepard's emergency motion for temporary restraining order and preliminary injunction (ECF No. 35), without prejudice to his right to pursue a claim based on 42 U.S.C. § 1983.  Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See

Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
February 25, 2026